AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Alabama

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Jose Emilio Ba-Ruiz | ) | Case No. |
| | ) | Mag: 26-40 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   February 2, 2026   in the county of   Shelby   in the
Northern   District of   Alabama  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 111 | Assault of a Federal Officer |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Waylon R. Hinkle

*Printed name and title*

Telephonically sworn to before me and electronically signed on

Date: 02/03/2026

*Judge's signature*

City and state: Birmingham, Alabama

John H. England, III, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Waylon R. Hinkle, being duly first sworn, depose and say:

1. I am a Special Agent with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Atlanta, Georgia Field Office. I have been employed as a Special Agent with HSI since March of 2019.  Before that time, I was employed as a Deportation Officer with ICE, Enforcement and Removal Operations (ERO), from May of 2009 to March of 2019. I attended and graduated from the HSI Special Agent Training program and the Basic Deportation Officer Training program, both held at the Federal Law Enforcement Training Center in Glynco, Georgia. As an HSI SA, I am authorized to conduct investigations, carry firearms, execute and serve search, seizure, and arrest warrants, make warrantless arrests, administer oaths, require and receive information relating to offenses against the United States, and take other actions as authorized by law. Before HSI and ERO, I was a probation/parole officer with the Alabama Bureau of Pardons and Paroles from February of 2008 until May of 2009.  I was also a police officer with the Homewood, Alabama, Police Department from September 2005 to February of 2008.

2. As a part of my official duties as an HSI Special Agent, I investigate criminal violations of federal laws, including, but not limited to, Title 8, United

States Code (U.S.C.) (aliens and nationality) and Title 18 U.S.C. § 111 (assaulting, resisting, or impeding certain officers or employees).

3. The facts in this affidavit come from my personal observations, my training and experience, the training and experience of other agents and officers, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. According to ICE/ERO and Customs and Border Protection (CBP), officers with ICE/ERO and CBP conducted surveillance at 1564 Kent Dairy Road in Alabaster, Alabama, in an attempt to locate a target of investigation. While conducting surveillance, a white Ford Van, Alabama tag number 1A18H38, left from the area of the targeted address. License plate checks revealed the registered owner was a foreign national with no known lawful status in the United States. Accordingly, a CBP Officer (CBPO) activated the emergency lights on the assigned vehicle and initiated a vehicle stop in the area of 22 Shady Acres Road in Alabaster, Alabama, located within the Northern District of Alabama.

5. Soon thereafter, a Deportation Officer (DO) arrived at the location to assist the CBPO. CBPO approached the driver and DO approached the front seat

passenger. Both CBPO and DO were wearing bullet proof vests with police markings.

6. CBPO spoke to the driver who stated the driver was a native and citizen of Mexico with no lawful identification in the United States. DO spoke to the front seat passenger, Jose Emilio BA-RUIZ. BA-RUIZ stated he was a native and citizen of Mexico with no lawful immigration documents to be in the United States. DO then asked BA-RUIZ to exit the vehicle and BA-RUIZ complied.

7. BA-RUIZ exited the vehicle and turned his back to DO, who saw BA-RUIZ had a knife in his front right pants pocket. DO verbally stated she saw the knife and recovered the knife. CBPO heard DO say BA-RUIZ had a knife. DO then told BA-RUIZ he was under arrest, on suspicion of being an illegal alien in the United States.

8. DO attempted to handcuff BA-RUIZ, who pulled away and began resisting, failing to comply with DO. During the encounter between BA-RUIZ and DO, CBPO could hear DO tell BA-RUIZ to stop and although unable to see the entire encounter, observed arms flailing in the air. In addition, a witness, who was later interviewed, also observed the struggle between DO and BA-RUIZ.

9. During the struggle, BA-RUIZ pushed DO's hands away and, in doing so, caused DO to fall to the ground and hit her head. BA-RUIZ then fled the scene on foot. CBPO went to the passenger side of the van to assist DO. At that time, the

witness walked up on scene and called emergency medical services to the scene. CBPO secured and arrested the driver of the van without incident.

10.    DO was transported to the hospital where it was discovered DO suffered a concussion.  DO also had a cut to the jaw, a knot on the head, a cut on the ankle, and a cut on the knee.  Pictures of some of DO's injuries are depicted below:







11. While on the scene, CBPO discovered a cellphone on the ground on the passenger side of the van that was believed to have been left by BA-RUIZ during the struggle. The cellphone was later turned over to another DO. Additional agents, officers, and your affiant, later arrived in the area to assist in locating BA-RUIZ.

12. While DO had the cellphone, he observed multiple phone numbers that were calling the cellphone. DO provided the phone numbers, and your affiant began conducting record checks. Record checks through ACCURINT revealed that one of the phone numbers was associated with an address close to the surveillance location at 1564 Kent Dairy Rd.

13. DO and Supervisory Detention and Deportation Officer (SDDO) traveled to the address and observed a maroon Honda Accord, Alabama tag number 58AER19, parked at the residence. A short time later, DO and SDDO observed the Honda Accord leave the residence and travel to the same area as the van did previously, that BA-RUIZ was a passenger in. The vehicle stopped and United States Marshal Service (USMS) observed a male enter the Honda Accord. Agents noted that although they observed a male enter the vehicle, it appeared that the vehicle was only occupied by the driver, indicating the male was attempting to conceal himself. Agents and officers then conducted a vehicle stop on the Honda Accord at the intersection of Kent Dairy Rd and State Route 119 in Alabaster.

14. Agents and officers approached the Honda Accord and observed an individual lying in the back seat of the vehicle. Subsequent investigation revealed that the individual was BA-RUIZ. Officers ordered BA-RUIZ out of the vehicle.

15. Officers spoke to BA-RUIZ and again determined BA-RUIZ was a native and citizen of Mexico who was unlawfully present in the United States. When asked why he ran previously, he stated because he did not have papers. BA-RUIZ was taken into ICE custody and transported to the ICE Birmingham Office.

16. Upon arrival, BA-RUIZ was fingerprinted and it was discovered BA-RUIZ was a native and citizen of Mexico who had been previously taken into ICE custody in 2011. BA-RUIZ was granted a voluntary departure under safeguards and returned to Mexico. While at the ICE office, a Homeland Security Special Agent (HSI SA) and your affiant conducted an interview with BA-RUIZ. SA interpreted between English and Spanish. BA-RUIZ was advised of his *Miranda* Rights. BA-RUIZ voluntarily waived his rights and agreed to speak with SA and me. (The following is an interview summary. It is not intended to be a verbatim account and does not memorialize all statements made during the interview. Communications by the parties were electronically recorded.) BA-RUIZ stated the following:

> BA-RUIZ stated he was a native and citizen of Mexico who was unlawfully present in the United States. BA-RUIZ was a passenger in the van and was stopped by law enforcement officers. BA-RUIZ stated he believed the

officers were ICE because they were wearing bullet proof vests and due to the vehicles the officers were driving. The officers approached the van BA-RUIZ was a passenger in and a female, matching the description of DO, spoke with BA-RUIZ. DO asked BA-RUIZ if he had any lawful documents and BA-RUIZ stated no. DO then asked BA-RUIZ to exit the van in which he complied and had his back to DO. DO checked BA-RUIZ for weapons and BA-RUIZ stated he had a knife in his front right pants pocket. When DO grabbed the knife, DO told BA-RUIZ he was under arrest. BA-RUIZ then tried to run. DO grabbed BA-RUIZ's vest and sweater, but BA-RUIZ began to run away. BA-RUIZ stated he ran into the woods and did not look back. BA-RUIZ stated he went into the woods for approximately one mile and then went back to the road and exited the woods further down the road from where the stop occurred. BA-RUIZ stated he borrowed a phone from a stranger and called someone. However, BA-RUIZ did not want to name who he called. BA-RUIZ stated he was later arrested while he was in a car.

The interview was then concluded.

17. While at the ICE Birmingham office, DO identified BA-RUIZ from a line-up. DO circled and initialed the photo of BA-RUIZ.

18. After interviewing BA-RUIZ, I traveled to the Alabaster Police Department (APD) and interviewed the witness. (The following is an interview

summary. It is not intended to be a verbatim account and does not memorialize all statements made during the interview. Communications by the parties were electronically recorded.) The witness stated the following:

On the morning of February 2, 2026, the witness was driving on Fulton Springs towards Highway 31 when the witness observed DO struggling with BA-RUIZ. The witness knew DO was a law enforcement officer because the witness observed DO had a bulletproof vest on and saw the emergency lights flashing from DO's and CBPO's vehicles. The witness observed BA-RUIZ was facing away from DO and was attempting to get away. The witness observed BA-RUIZ swing his right elbow towards DO. That was when the witness observed DO let go of BA-RUIZ and fall hard to the ground. BA-RUIZ ran from the scene on foot. The witness's view was partially obstructed by a vehicle, but the witness did see DO hit the ground. The witness grabbed the witness's firearm and then approached DO to assist. As the witness approached, DO came to her feet and was with CBPO. The witness told DO and CBPO the witness was armed for safety. The witness observed DO and knew something did not seem right. DO's eyes were glossy and DO seemed confused because DO had to think too hard to answer a simple question from CBPO. The witness had prior experience with concussions and felt DO might be suffering from a concussion. The witness had DO sit down and the witness

contacted the Alabaster Fire Department who dispatched emergency medical personnel to the scene. The witness left once additional personnel arrived. The interview was concluded.

## CONCLUSION

19.     Based on the above facts, I believe there is probable cause to establish Jose Emilio Ba-Ruiz was in violation of Title 18 U.S.C. § 111 (assaulting, resisting, or impeding certain officers or employees).

_____
Waylon Hinkle, Affiant
Special Agent
Homeland Security Investigations

Sworn to telephonically and subscribed electronically this the <u>3rd</u> day of February 2026.

_____
HON. John H. England, III
United States Magistrate Judge